UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

SCOTT MILAM, individually and as
personal representative of the ESTATE OF
CARRIE MILAM; and CAROLINE TYE,

    *Plaintiffs*,

v.                                                                                    Case No. _____

MSC CRUISES S.A., a foreign corporation,

    *Defendants*.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, through their undersigned counsel, sue Defendants and allege as follows:

### INTRODUCTION

1. This case arises following a family cruise aboard the *MSC Seashore* that ended in tragedy.



2. The cruise ended in tragedy because Defendant MSC Cruises, S.A. operated one of *MSC Seashore* crowded pools without a single lifeguard—a basic safety measure in the industry—directly causing the preventable drowning and death of passenger Carrie Milam.

Further, they failed to implement any adequate emergency identification or emergency response plan, delaying and denying any lifesaving care to Carrie Milam.

3. And while Carrie Milam fought for her life, Defendants forced the Milams off the ship and abandoned them in a foreign port, providing no guidance or support.

4. Indeed, as Carrie Milam was dying, the *MSC Seashore* sailed away.

5. Now Carrie's surviving husband and daughter bring this action, suing Defendants for the events before and after the death of their wife and mother, respectively.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and the forum-selection clause contained within the passenger ticket contract governing the cruise on which the decedent was a passenger.

8. Defendants are subject to personal jurisdiction in this District because they conduct substantial, continuous, and systematic business in Florida and within this judicial district.

9. Defendants have agreed in writing not to contest the jurisdiction of this Court.

## PARTIES

10. Plaintiff Scott Milam is the surviving spouse of the decedent, Carrie Milam, and is the duly appointed Personal Representative of her Estate. He is, and was at all relevant times, a citizen of the State of Georgia.

11. Plaintiff Caroline Tye is the surviving daughter of the decedent, Carrie Milam. She is, and was at all relevant times, a citizen of the State of Georgia.

12. Defendant, MSC Cruises S.A., is a foreign corporation with its principal place of business in Geneva, Switzerland. Upon information and belief, it owned, operated, managed, and/or controlled the vessel *MSC Seashore* at all relevant times. Defendant MSC Cruises S.A. has agreed in writing to waive service of process.

## FACTUAL BACKGROUND

13. On or about May 30, 2025, the decedent Carrie Milam and Scott Milam were fare-paying passengers aboard the cruise ship *MSC Seashore*, which was owned, operated, and controlled by the Defendants.

14. While the vessel was docked in Cozumel, Mexico, Carrie Milam went to swim in one of *MSC Seashore*'s pools that was open and available for passenger use.

15. But because of Defendants' negligence, a dangerous condition existed at the swimming pool. The pool was not guarded, and Defendants failed to provide any lifeguards or other safety supervision for passengers using the pool. Most, or all, other cruise ship companies in the world have lifeguards employed to surveil cruise ship pools, making the lack of lifeguards aboard the *MSC Seashore* a severe step below the standard of care for passenger safety on a cruise ship.

16. Additionally, MSC Cruises failed to have an adequate emergency identification plan to identify a guest in severe danger of injury or death and failed to have any adequate rescue or emergency action plan to respond to a drowning emergency, which contributed to the worsening of Carrie Milam's drowning injuries and prevented her from getting lifesaving care in a timely fashion. This failure to have an emergency identification plan or rescue/emergency action plan fell below the standard of care expected of cruise ship companies, pool operators, owners of recreational attractions, and/or hospitality providers.

17. While swimming, the decedent was rendered unconscious and remained submerged in the pool for a substantial period of time before being discovered by another passenger.

18. As a result of this incident, Carrie Milam was rushed to a hospital where her condition worsened. The decedent suffered immense physical pain and suffering before developing secondary lung inflammation related to the onboard drowning event.

19. As a direct result of the injuries sustained in the drowning incident and due to the negligent, reckless, willful and wanton behavior of the Defendants, Carrie Milam died on June 4, 2025.

## CLAIMS

### COUNT 1 – WRONGFUL DEATH – NEGLIGENCE AND GROSS NEGLIGENCE

20. On or about May 30, 2025, the decedent was a passenger aboard the *MSC Seashore* under the care of Defendants. As a common carrier, Defendants owed the decedent a duty of reasonable care under the circumstances.

21. Defendants breached their legal duty to the decedent when they caused and/or failed to prevent her drowning. Specifically, Defendants breached their duty and were negligent and grossly negligent by:

   a. Failing to provide the decedent with a safe place to swim;
   b. Failing to provide lifeguards to monitor the swimming area;
   c. Failing to adequately monitor or supervise the swimming area;
   d. Failing to provide lifeguards in contravention of the standard of care for passenger safety established by all other major cruise ship companies;
   e. Failing to warn the decedent of the dangers in the swimming area, including the absence of lifeguards or any safety supervision;
   f. Failing to prevent the drowning of the decedent;
   g. Failing to timely rescue the decedent;
   h. Failing to implement a proper emergency action plan for an unguarded pool;
   i. Failing to have properly trained staff available to respond to a drowning event;
   j. Failing to properly or adequately perform CPR and other resuscitative efforts on the decedent;
   k. Failing to keep the swimming area safe with adequate safety devices;
   l. Having either actual or constructive knowledge of the unsafe conditions at the swimming area;
   m. Failing to institute adequate policies and procedures that would have prevented this incident from occurring; and
   n. Other various actions and inactions deemed negligent and grossly negligent.

22. Before the incident, Defendants knew or should have known about the risks of operating a passenger swimming pool without any lifeguards or safety supervision. Their conduct exhibited a knowing, willful, and wanton disregard for the health and safety of cruise patrons, resulting in death and injury to the decedent and injury to the Plaintiffs.

23. As a direct and proximate result of Defendants' negligence, the decedent drowned in the *MSC Seashore* pool. As a result of her injuries sustained on May 30, 2025, the decedent ultimately lost her life. Plaintiffs are entitled to damages for the death of Carrie Milam under the applicable wrongful death statute.

## **COUNT 2 – WRONGFUL DEATH – PREMISES LIABILITY**

24. Defendants owned, occupied, and controlled the cruise ship where the decedent was injured and ultimately died. Carrie Milam was an invitee on the premises.

25. The condition of the swimming pool area where the decedent was injured posed an unreasonable risk of harm because the pool was operated for passenger use without any lifeguards, safety systems, or adequate emergency response procedures in place for a drowning incident. Defendants knew or reasonably should have known of this unreasonably dangerous condition.

26. Carrie Milam did not know of the unreasonably dangerous condition and did not voluntarily assume any risk of confronting the dangerous condition.

27. Defendants owed a duty to inspect the premises, warn the decedent of the unreasonably dangerous condition, and make the condition reasonably safe. Defendants breached these duties by not making the condition safe (e.g., by providing lifeguards, implementing an adequate emergency identification plan) and by failing to warn the decedent of the known, unreasonably dangerous condition of an unsupervised pool.

28. As a direct and proximate result of Defendants' breaches of these duties, Mrs. Milam sustained severe injuries which resulted in physical pain, mental anguish, emotional distress, and ultimately her death. Plaintiffs are entitled to damages for the death of Carrie Milam under the applicable wrongful death statute.

### COUNT 3 – INTENTIONAL INFLECTION OF EMOTIONAL DISTRESS

29. Defendants' response to the drowning emergency, notification of Plaintiff Scott Milam as to his wife's dire condition, and abandonment of Plaintiff and the decedent in a foreign country without direction was extreme and outrageous.

30. After the drowning incident, Defendants' staff called Mr. Milam, rushed him to the scene, then directed him to immediately pack his bags and get off the ship with the decedent, who was still struggling from the effects of drowning. Mr. Milam and the decedent were rushed off the ship and left with a Mexican ambulance, with no direction about how to navigate the local medical system. The cruise ship embarked and left port immediately after the Milams disembarked, abandoning them in a foreign country as Scott's wife, Carrie, was dying.

31. Over the subsequent days, as Carrie Milam suffered and eventually died, Defendants continued to ignore the Milams despite Defendants' superior knowledge of how to navigate the Mexican emergency and medical system, given their extensive business presence in Cozumel.

32. Defendants knew that their conduct would cause Plaintiff Scott Milam to suffer severe emotional distress and/or acted with reckless disregard to the probability that their conduct would cause Plaintiff Scott Milam to suffer severe emotional distress.

33. As a direct and proximate result of Defendants' extreme and outrageous conduct, Scott Milam suffered serious emotional distress that has manifested in physical injury to Scott Milam, entitling him to damages.

## DAMAGES

34. As wrongful death and survival beneficiaries, Plaintiffs seek to recover all damages available under the applicable law. Plaintiffs are entitled to bring both wrongful death and survival claims as statutory beneficiaries and as the representative of the Estate. To the extent permitted by applicable law, Plaintiffs seek the following damages:

   a. Pre-death physical pain and suffering;

   b. Pre-death mental pain, suffering, fear, and emotional distress;

   c. Loss of earning capacity and inheritance;

   d. Loss of services and support;

   e. Loss of nurture, guidance, care, and instruction;

   f. Loss of enjoyment of life;

   g. Loss of society and companionship;

   h. Emotional distress and mental anguish for the survivors;

   i. Burial and funeral expenses;

   j. Past and future medical expenses;

   k. Punitive damages for extreme and outrageous, reckless, willful, wanton, and malicious behavior; and

   l. All other wrongful death and survivorship damages recoverable by law.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: November 18, 2025

[remainder of page intentionally blank]

Respectfully submitted,

**SCHLESINGER LAW OFFICES, P.A.**

*/s/ Jeffrey L. Haberman*
Jeffrey L. Haberman
Florida Bar No. 98522
1212 Southeast 3rd Avenue
Fort Lauderdale, Florida 33316
Telephone: (954) 320-9507
jhaberman@schlesingerlaw.com

- and -

**ARNOLD & ITKIN LLP**

*/s/ Noah M. Wexler*
Jason A. Itkin*
Texas Bar No. 24032461
Noah M. Wexler*
Texas Bar No. 24060816
Trevor M. Courtney*
Texas Bar No. 24125599
Daniel J. Cassee*
Texas Bar No. 24141820
Foster A. Willie*
Texas Bar No. 24146480
B. Hall Sasnett*
Texas Bar No. 24131025
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
jitkin@arnolditkin.com
nwexler@arnolditkin.com
tcourtney@arnolditkin.com
dcassee@arnolditkin.com
fwillie@arnolditkin.com
hsasnett@arnolditkin.com
noahteam@arnolditkin.com
e-service@arnolditkin.com

* *pro hac vice anticipated*

**COUNSEL FOR PLAINTIFFS**